**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JACOB WILSON and                    :
ADELINE DEL VALLE                   :
    *Plaintiff*,                 :
                                :    Case No.: 3:22- CV-537 (OAW)
    v.                          :
                                :
CONNECTICUT DEPARTMENT              :
OF TRANSPORTATION,                  :
    *Defendant*.                :

<u>**RULING ON DEFENDANT'S MOTION TO DISMISS**</u>

    **THIS ACTION** is before the court upon Defendant's Motion to Dismiss and memorandum in support thereof (together, "Motion").[1]  *See* ECF Nos. 14 and 14-1.  The court has reviewed the Motion, Plaintiff's opposition to the Motion ("Opposition"), *see* ECF No. 17, Defendant's reply brief, *see* ECF No. 18, all exhibits to the parties' briefs, and the record in this matter and is thoroughly apprised in the premises.  For the reasons discussed herein, the court hereby <u>**GRANTS**</u> **in part and** <u>**DENIES**</u> **in part** the Motion.

**I.    <u>BACKGROUND</u>**[2]

    Plaintiff Wilson is an African-American man.  ECF No. 1 ¶ 3.  Plaintiff Del Valle is a Hispanic woman and Plaintiff Wilson's mother.  *Id.* ¶ 4.  Defendant is Plaintiff Wilson's former employer and Plaintiff Del Valle's current employer.  *Id.* ¶¶ 3–4.

    Plaintiff Wilson was hired on or about December 7, 2019.  *Id.* ¶ 6.  He asserts that while working for Defendant, he observed employees who were not African-American

---

[1] This action currently is stayed pending disposition of the Motion.  Plaintiffs have filed a motion to lift the stay, *see* ECF No. 23, which is mooted by this ruling.
[2] All background facts are taken from the complaint and as such are allegations.

being given "special privileges" that were denied to him.[3]   *Id.* ¶ 8.   Plaintiff Wilson complained of this disparate treatment to his union representative, who allegedly replied that Plaintiff Wilson should stop complaining and be glad he had a job.   *Id.* ¶ 9.   Plaintiff Wilson was terminated on April 15, 2020.   *Id.* ¶¶ 10–11.   The reason given for his termination was that he had been observed sleeping on the job on February 23, 2020. *Id.* ¶ 11.   Plaintiff Wilson denies ever falling asleep on the job, and he asserts that between the date of the alleged infraction and the date of his termination, no one addressed the incident with him.   *Id.* ¶¶ 13–14.   The acting director, who handed Plaintiff Wilson his termination letter, allegedly said that if Plaintiff Wilson had kept his mouth shut, he would not have lost his job.   *Id.* ¶¶ 11, 45.

Plaintiff Wilson filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which was dismissed on January 18, 2022.[4]   *Id.* ¶ 15; *see also* ECF No. 14-3.

Plaintiff Del Valle has been employed by Defendant since 2014.   ECF No. 1 ¶ 17. She alleges that throughout her time working for Defendant, she has been treated differently than non-Hispanic and male employees.   *Id.* ¶ 18.   More specifically, Plaintiff Del Valle alleges she was made to "perform harder, more physically demanding work" than non-Hispanic women, and has been denied work breaks.   *Id.* ¶ 19.   Plaintiff Del Valle describes one white female coworker who is absent when toilsome work needs doing and who only appears when the work is done.   *Id.* ¶ 23.   This behavior has not been

---

[3] It is not clear what these "special privileges" were, specifically.
[4] Plaintiff Wilson asserts that he received a release of jurisdiction on this date, but the exhibits to the Motion clearly show that what he received was a dismissal.

addressed.  *Id.*  Another white woman Plaintiff Del Valle works with is not disciplined for taking long lunch breaks.  *Id.* ¶ 22.

Plaintiff Del Valle also alleges that she has not been permitted to wear shoes other than steel-toed boots, but a white colleague is permitted to do so and "to go where[]ever she wants."  *Id.* ¶ 21.  The complaint also describes an incident where a white female colleague broke some equipment but was not disciplined for the error.  *Id.* ¶ 20.  Plaintiff Del Valle speculates that a minority employee would have been scrutinized if they had made the same mistake.  *Id.*  She does not describe any other incident that would support her speculation, though.

She also states that she has heard her crew leader comment that women should not be working for Defendant, and that her supervisor and her crew leader have referred to Hispanic employees as "you people."  *Id.* ¶¶ 24–25.  Finally, she asserts that over the course of her employment, she has been given fewer opportunities for overtime than her peers who are not Hispanic women.  *Id.* ¶ 26.

Plaintiff Del Valle filed an internal complaint of race and gender discrimination with Defendant's Affirmative Action Unit on January 22, 2020.[5]  *Id.* ¶ 27.  On February 4, 2020, she complained to someone in management about the pattern of discrimination.  *Id.* ¶ 43.  On May 5, 2020, she was notified that her complaints would yield no responsive action from management.  *Id.* ¶ 44.  On May 15, 2020, the acting director and a supervisor told

---

[5] A substantial part of the complaint is devoted to describing an incident earlier in January where Plaintiff Del Valle argued with the acting director and Plaintiff Wilson's supervisor about an apparent discrepancy in Plaintiff Wilson's paycheck.  The director and the supervisor allegedly told her that Plaintiff Wilson was a liar and a poor worker, and they accused Plaintiff Del Valle of using the office computers to collect information about her son's paycheck, which she denied.  ECF No. 1 ¶ 28–40.  Plaintiff Del Valle accused the others of being disrespectful.  The altercation culminated in Plaintiff Del Valle's office keys being confiscated.  These allegations are never relied upon for any of Plaintiffs' claims, and their relevance are unclear, so the court will not discuss them in any further detail.

her that they had known her complaint would go nowhere, and that now they would get rid of her.  *Id.* ¶ 45.

On May 12, 2021, Plaintiff Del Valle suffered an injury while at work and was reassigned to light duty.  *Id.* ¶ 46.  She claims that her multiple requests to be assigned to the position of backup clerk have been denied because she is restricted to light duty, but she asserts that her physical limitations do not prevent her performing the tasks of a backup clerk.  *Id.* ¶ 48–49.  She also asserts that she has been denied access to certain trainings although her physical limitations would not prevent her being able to participate in those trainings. *Id.* ¶¶ 42, 51–52.

Plaintiff del Valle filed a complaint of discrimination and retaliation with the CHRO on June 30, 2020.  *Id.* ¶ 54.  On March 23, 2022, a Release of Jurisdiction was issued. *Id.*

Plaintiffs filed their complaint on April 23, 2022, asserting six claims. *See generally* ECF No. 1.  Counts One and Two raise Title VII claims as to both the plaintiffs (racial discrimination and retaliation, respectively).  Counts Three and Four allege discrimination against Plaintiff Del Valle on the basis of her disability in violation of the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA"), respectively.  Counts Five and Six allege gender discrimination as to Plaintiff in violation of Title VII and the CFEPA, respectively.  Plaintiffs seek damages plus costs and fees.

## II.    LEGAL STANDARD

It is axiomatic that federal courts have limited jurisdiction and must dismiss actions where subject matter jurisdiction is lacking.  *See Nike, Inc. v. Already, LLC*, 663 F.3d 89,

94 (2d. Cir. 2011). A party may move to dismiss a claim where the federal courts do not have jurisdiction to hear it. Fed. R. Civ. P. 12(b)(1). In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Dismissal also is appropriate where the facts alleged in the complaint are insufficient to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the nonmovant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ashcroft*, 556 U.S. at 684 (concluding that the *Twombly* pleading standard applies in "all civil actions").

## III.   **DISCUSSION**

Defendant alleges that all the claims must be dismissed. With respect to Plaintiff Wilson's two claims, they argue that both his discrimination and retaliation claim (Counts One and Two, respectively) must be dismissed because he has failed to exhaust his administrative remedies. They also argue that he has failed to state a claim for

discrimination. And with respect to Plaintiff Del Valle's claims, they argue that the Eleventh Amendment bars her CFEPA and ADA claims (Counts Three, Four, and Six), that she has failed to exhaust administrative remedies for her disability claim under the CFEPA (Count Four), and that she has failed to state any of her claims.

Because the Eleventh Amendment argument calls jurisdiction into question, the court will begin there.

### 1. **CFEPA and ADA Claims**

The Eleventh Amendment bars federal courts from hearing suits brought against a state by its citizens. *See generally Hans v. Louisiana*, 134 U.S. 1 (1890). But "[a] sovereign's immunity may be waived, and the [Supreme Court of the United States] consistently has held that a State may consent to suit against it in federal court." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Such a waiver of immunity must be expressed in clear terms. *Id.* Similarly, Congress "has power with respect to the rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity," but this exercise of power also must be done unequivocally. *Id.*

A state agency enjoys the protection of the Eleventh Amendment where it functions as an "arm of the State." *Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429–30 (1997). Where an action names a state agency as a defendant, but the suit "is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit . . . ." *Id.* At 429 (quoting *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459 (1945)). Because a suit against the Connecticut Department of Transportation essentially is a suit against the State of Connecticut, the court finds that Defendant is entitled to exercise

sovereign immunity where that protection has not been waived.  *See Martires v. Connecticut Dep't of Transp.,* 596 F. Supp. 2d 425, 445 (D. Conn. 2009) (finding that the Connecticut Department of Transportation was protected by sovereign immunity against civil rights claims).

And it is well settled that Connecticut has not consented to defend CFEPA claims in federal court.  *See Lyon v. Jones,* 168 F. Supp. 2d 1, *6 (D. Conn. 2001) (dismissing CFEPA claims as barred by the Eleventh Amendment).  To the contrary, the CFEPA specifies that suits may be brought only in the state's superior court.  *Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 578 (D. Conn. 2016).  Therefore, this federal court may not hear the CFEPA claims brought in this action.

Plaintiffs argue that the court may hear the CFEPA claims pursuant to supplemental jurisdiction, but supplemental jurisdiction cannot defeat Eleventh Amendment immunity.  *Pennhurst,* 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.")*; see also Vaden v. Connecticut*, 557 F. Supp. 2d 279, 289 (D. Conn. 2008) ("[T]he Eleventh Amendment necessarily also bars exercise of federal statutory supplemental jurisdiction over suits against a State.").  Therefore, it is clear that Counts Four[6] and Six must be dismissed.

Plaintiff Del Valle's ADA claim is barred for the same reason.  The Supreme Court has held, clearly and unequivocally, that the Eleventh Amendment shields state employers from claims arising under Title I of the ADA, which is the part of the ADA that addresses discrimination in employment. *Bd. of Trustees of Univ. of Alabama v. Garrett*,

---

[6] Because the court concludes that Count Four is barred by sovereign immunity, the court need not reach the question of whether Plaintiff Del Valle exhausted her administrative remedies with respect to this claim.

531 U.S. 356, 360 (2001); *see also Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013) ("A public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees.").[7]   Thus, there can be no argument that Count Three also must be dismissed.[8]

### 2. Title VII Claims

The Eleventh Amendment does not bar citizens from suing state agencies under Title VII, though.  The court therefore turns to Counts One, Two, and Five.

Counts One and Two assert claims of racial discrimination and retaliation, respectively, as to each plaintiff.  Count Five asserts gender discrimination as to Plaintiff Del Valle.  Defendant argues that all these counts must be dismissed as they relate to Plaintiff Del Valle because they fail to state a claim.  And Defendant argues that Counts One and Two must be dismissed as they relate to Plaintiff Wilson because he failed to exhaust his administrative remedies.  Finally, Defendant argues that Plaintiff Wilson has failed to state a claim in Count One (the discrimination claim).

### i. *Exhaustion*

The court takes up the exhaustion argument first.  There is a comprehensive administrative framework in place to address claims arising under Title VII.  Plaintiffs must first file a complaint with the Equal Employment Opportunity Commission ("EEOC"), who

---

[7] The complaint names 14 of Defendant's employees by name, and references others more generally, so the court is satisfied that this case fits within the ambit of *Mary Jo C.*

[8] Plaintiffs have filed a motion to amend the complaint, *see* ECF No. 25, asserting that such amendment is necessary to incorporate the fact that the CHRO and the EEOC have issued a release of jurisdiction and a notice of right to sue in relation to a complaint of disability discrimination from Plaintiff Del Valle. The court finds the proposed amendment would be futile, since this new factual allegation does not save the disability claims from dismissal under the Eleventh Amendment.  The motion to amend therefore must be denied, and the court need not address the additional communications from the CHRO or the EEOC any further.

investigates the allegations and determines whether they ought to bring claims against the employer, or whether they ought to release jurisdiction and allow the plaintiff to pursue their claims individually.  42 U.S.C.A. § 2000e-5(b), (e).  Many states, Connecticut among them, have an analogous state agency that also reviews allegations of employment discrimination.  In Connecticut, it is the CHRO.[9]  The EEOC is required to defer to the CHRO for 60 days following the filing of a discrimination complaint to allow the state to handle the claim, if it chooses to do so.  42 U.S.C.A. § 2000e-5(c).  After this deferral period, the EEOC has jurisdiction to review the claim.  *Id.*  If the EEOC fails to make any determination as to the complaint within 180 days of having jurisdiction over it, the EEOC "shall" so notify the grievant, and the grievant then has 90 days to commence a civil suit. 42 U.S.C.A. § 2000e-5(f)(1).

The administrative timeline for Plaintiffs is not entirely clear.  It appears that each plaintiff filed their grievance with the CHRO, which in turn sent each complaint to the EEOC for dual filing.  ECF Nos. 14-2, 14-4.  Plaintiff Del Valle's complaint is dated June 30, 2020, and is stamped as being received by the State of Connecticut on July 10, 2020. ECF No. 14-4.  Plaintiff Wilson's complaint is dated June 30, 2020, and is stamped as being received by the State of Connecticut on July 21, 2020.  ECF No. 14-2.

Plaintiff Del Valle asserts that the CHRO released its jurisdiction as to her complaint on March 23, 2022, though the release itself was not docketed.  ECF No. 1 ¶ 54.  Defendant does not dispute that Plaintiff Del Valle has exhausted the administrative remedies for her Title VII claims, and so the court will accept that there is no procedural impediment to her claims in Counts One, Two, and Five.

---

[9] There are specific time periods within which a complaint must be filed with the CHRO and the EEOC, but there is no argument that Plaintiffs' complaints were untimely.

However, it appears that Plaintiff Wilson never received a release of jurisdiction from the CHRO.  Rather, on January 18, 2022, he received a final agency action of "No Reasonable Cause," ECF No. 14-3, which is a dismissal for the reason that there is "no reasonable possibility that investigating the complaint will result in a finding of reasonable cause."  Conn. Gen. Stat. Ann. § 46a-83(c).  Defendant argues in the Motion that this final agency action does not serve to exhaust Defendant's administrative remedies absent an official release of jurisdiction.

The court need not address this argument, though, because whatever happened with the CHRO, it is clear that Plaintiff Wilson did receive a right-to-sue notice from the EEOC on June 14, 2022.  *See* ECF No. 17-1.  The court finds that this notice satisfies the exhaustion requirement as to his Title VII claims.

Defendant's argument to the contrary is unavailing.  Defendant contends that Plaintiff Wilson's Title VII claims still should be dismissed because he was required to wait until *after* he had received this release to file this action, but he filed suit well *before* receipt of the notice, and thus his claims were premature.

Defendant concedes, though, that under Title VII, the exhaustion requirement is not jurisdictional, and so it may be waived or estopped where appropriate.  *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999) ("The Supreme Court has stated that 'filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'") (quoting *Zipes v. Trans World Airlines*, Inc., 455 U.S. 385, 393 (1982)).  Still, Defendant argues that allowing these claims to proceed under these circumstances would defeat the purpose of

10

exhaustion, namely, to allow an administrative agency the first opportunity to take remedial action.

The court is unpersuaded.  In the first instance, the EEOC had ample time to exercise its authority to adjudicate the complaint, and it declined to take any remedial action with respect to Plaintiff Wilson's claims.  Moreover, according to the relevant regulations, Plaintiff Wilson should have received a release of jurisdiction *long* before he did.  By the court's calculation, had the EEOC disposed of his complaint within 180 days of having jurisdiction over it, Plaintiff Wilson would have had his right-to-sue notice by March 18, 2021.[10]  But, of course, a global pandemic can affect an agency's ability to function efficiently, and for that same reason, the court finds it appropriate to approach Plaintiff Wilson's complaint with appreciation for the unique challenges presented in navigating the administrative process when the administration is not operating at full capacity.

Moreover, even absent a global emergency, the court finds equitable modification of the exhaustion requirement to be uniquely necessary in the present circumstances. The court recognizes that district courts often dismiss premature Title VII claims, but without prejudice to refiling once the right to sue has been issued.  *See, e.g., Hladki v. Jeffrey's Consol., Ltd.,* 652 F. Supp. 388, 393 (E.D.N.Y. 1987).  In this case, though, the notice did not issue until after this case had been initiated and the Motion had been filed, and so refiling a separate action may well have rendered Plaintiff Wilson's claim subject to claim preclusion.  But the 90-day period to initiate a civil suit has long expired by the

---

[10] This date is 240 days from the date the State of Connecticut stamped its receipt of the complaint, which represents the 180 days the EEOC has to investigate a claim, plus 60 days for which it was required to defer jurisdiction to the CHRO.

date of this ruling, which may well preclude Plaintiff Wilson from pursuing his claims in a separate suit.  Thus, the court finds it in the interest of justice to grant Plaintiff Wilson equitable relief in this case, and to excuse him from strict compliance with the exhaustion requirement.  *See Pinkard v. Pullman-Standard,* 678 F.2d 1211, 1219 (5th Cir. Unit B 1982), reh'g en banc denied, 685 F.2d 1383, cert. denied, 459 U.S. 1105 (1983) (waiving exhaustion where procedural anomalies related to class actions caused a plaintiff to miss his opportunity to file suit after receipt of the right to sue notice).

Because failure to exhaust is Defendant's only argument for dismissing Plaintiff Wilson's retaliation claim in Count Two, the Motion is denied with respect to that claim.

### 3.  Failure to State a Claim

Finally, Defendant argues that Plaintiff Wilson's discrimination claim and each of Plaintiff Del Valle's remaining claims should be dismissed because they fail to state a cognizable claim under Title VII.

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to discriminate against an employee because of that employee's race, color, or sex.  42 U.S.C.A. § 2000e-2.  The statute is intended "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).  "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')."  *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Recognizing that "most discrimination and retaliation is not carried out so openly as to

provide direct proof of it," *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004), plaintiffs asserting disparate treatment claims[11] may show discriminatory intent by either direct or circumstantial evidence of animus, *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022).

Direct evidence of discriminatory animus includes employer policies, practices, or decisions that expressly rely upon a protected characteristic. *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015). Plaintiffs do not allege that Defendant took any action against them explicitly because of their race or gender, so there is no direct evidence of discrimination. The absence of direct evidence is not fatal to their claims, though. They still may show circumstantial evidence of discriminatory animus using the *McDonnell Douglas* burden-shifting framework. First, they must make out a prima facie case by showing that they are a member of a protected class, that they are qualified for the positions they held or continue to hold, that they suffered an adverse action, and that the facts imply a discriminatory intent. *Radwan*, 55 F.4th at 130. With respect to the third element, an adverse action is defined as a materially adverse change in the terms and conditions of employment. *Sanders*, 361 F.3d at 755. It must be more than an inconvenience or a change in an employee's responsibilities. *Id.* And with respect to the fourth element, there are several recognized methods by which a Title VII plaintiff can show circumstances which might lead a reasonable juror to infer discriminatory animus, one of which is to point to comparators who are similarly situated to the plaintiff, but who are not of the same protected class, and who were not treated as harshly as the plaintiff. *Radwan*, 55 F.4th at 132.

---

[11] Plaintiffs do not proceed under a disparate impact theory.

If the plaintiffs successfully present a prima facie case of discrimination, the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for the adverse action. *Id.* at 130. Then the burden shifts back to Plaintiffs to show that the proffered reason is pretextual. *Id.*

There is no dispute that Plaintiffs have satisfied the first and second elements of the prima facie test (that they are members of a protected class and are qualified for the work they were hired to perform). Defendant argues, however, that neither plaintiff has alleged an adverse action nor any facts that support an inference of discrimination.

### i.   *Discrimination as to Plaintiff Wilson*

With respect to Plaintiff Wilson, Defendant argues that the alleged denial of "special privileges" does not qualify as an adverse action for purposes of Title VII. The court hesitates to find that the denial of perquisites made available to some workers can never provide the basis for a Title VII claim, but it agrees with Defendant in this instance. Absent any description in the complaint of what these "special privileges" were, the court cannot assess whether they qualify as materially adverse changes to the terms of Plaintiff Wilson's employment. Accordingly, the Motion is granted insofar as Count One seeks to recover for the denial of these "special privileges."

However, it cannot be argued that Plaintiff Wilson's termination qualifies as an adverse action sufficient to carry his Title VII claim. Thus, the court finds the third element of the prima facie case satisfied with respect to Plaintiff Wilson in Count One.

The court also finds the fourth element satisfied.[12]   There are two facts which, when taken together, may lead a reasonable factfinder to infer discriminatory animus. First, Plaintiff Wilson was fired for an incident (which he denies occurs at all) that allegedly occurred over a month before he was fired, for which he received no intervening discipline before his termination.   And second, at the termination itself, Defendant's acting director allegedly told Plaintiff Wilson that if he had "kept his mouth shut" then he would not have been losing his job.   That remark appears to refer to Plaintiff Wilson's complaints about racial discrimination, and the fact that the remark was made at the moment of his termination is sufficient to allow a reasonable factfinder to infer that the termination was motivated by discriminatory animus.[13]

Although the *McDonnell Douglas* framework has two additional steps, Defendant does not make any argument as to their burden at the next step.  That is to say, Defendant does not argue that they had a legitimate reason for terminating Plaintiff Wilson.  But even assuming that they were to point to the same justification given at the time of the termination (Plaintiff Wilson's alleged nap on the job), the court would find that these same two facts would support an inference that the justification is pretextual.

Accordingly, the Motion must be denied with respect to Plaintiff Wilson's Title VII claim for discrimination in Count One.

---

[12] Defendant argues that Plaintiff Wilson has not described any similarly-situated individuals, and this is true, but that argument related to the individuals receiving "special treatment," which the court already has found is not an adequately-pled adverse action.  Thus, the court will not address this argument here.
[13] The court acknowledges Defendant's point that Plaintiff Wilson made his complaint to his union representative and not to his manager, but again, the fact that a manager referred to it allows the court to draw the reasonable inference from the alleged facts that the complaint had made its way to Defendant.

ii. _Discrimination as to Plaintiff Del Valle_

Plaintiff Del Valle asserts that she has experienced adverse action in the denial of training and overtime opportunities, the assignment of more arduous tasks, fewer perquisites, and the rejection of her request to be the backup clerk.

Plaintiff Del Valle points out that courts have concluded that the denial of opportunities for professional development, like trainings, can qualify as an adverse action, where those opportunities "bear on either [the] plaintiff's opportunities for professional growth and career advancement or directly on [the] plaintiff's compensation." _Nakis v. Potter_, No. 01 CIV. 10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004).  But it is not alleged that the trainings from which Plaintiff Del Valle was excluded had any effect on her career or compensation.  The only trainings she cites are one on "the double wing" and one involving "signs and markings," the latter of which enabled employees to earn some sort of "fuel certification."  There is no explanation of what it would mean for Plaintiff Del Valle's career if she were trained on the double wing, or if she had the referenced certification.  Plaintiff Del Valle never alleges that these trainings (or any other) would have enabled her to progress in her career.  For this reason, the court cannot conclude that the exclusion from trainings qualifies as an adverse action.[14]

Similarly, it is not clear that the position of backup clerk is superior in any way to Plaintiff Del Valle's current position.  The simple fact that an individual has sought but has been denied a particular position is not, in itself, an adverse action.  There must be some affirmative indicia as to why the denied position is more desirable, perhaps because it

---

[14] The court notes, too, that Plaintiff Del Valle's allegation with respect to the signs-and-markings training appears to be that she was excluded from the training because she was on light duty at the time, which she claims was an example of disability discrimination.  But, as discussed previously, the disability claims have been dismissed.

has better pay or better hours.  *See Beyer v. Cnty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) ("A denial of a transfer may also constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; 'subjective, personal disappointment[ ]' is not enough.") (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)) (alteration in original).  But here again, Plaintiff Del Valle fails to offer any specifics as to the backup clerk position.  Consequently, the court cannot find that the failure to make her the backup clerk qualifies as an adverse action for the purposes of her discrimination claim.

Plaintiff Del Valle also asserts that she has been denied certain perquisites and has been made to perform more arduous tasks than others.  But, here, too, there are insufficient facts from which the court can find an adverse action.  With respect to perquisites, she alleges that one white coworker is permitted to wear shoes that do not have steel toes and may "go where[]ever she wants."  ECF No. 1 ¶ 21.  In the first instance, it is not clear what Plaintiff Del Valle is alleging when she says this other individual may go where she wants.  The court will assume for this discussion that the allegation is that this colleague is permitted to be off-task without being disciplined.  Even with that assumption, though, the court cannot find that these de minimus allowances for other coworkers materially affects the terms and conditions of Plaintiff Del Valle's employment.  While in some cases the inconsistent application of discipline may qualify as an adverse action, Plaintiff Del Valle does not allege that she was subjected to discipline for these workplace violations.  She states that she "was not permitted" to wear shoes without steel toes, but it is not clear whether she was disciplined for wearing nonconforming shoes, and if so, what discipline was meted out.  The same is true for the

alleged allowance of a white coworker to have long lunch breaks.  Thus, even making several inferences (or perhaps assumptions) in Plaintiff Del Valle's favor, the court cannot find that these alleged facts show an adverse action.

And with respect to her work assignments, generally speaking, "[t]he assignment of tasks that are within the description or duties of the position, even if less desirable, do not rise to the level of an adverse employment action."  *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 350 (S.D.N.Y. 2010).  Plaintiff Del Valle does not assert that the tasks she was asked to perform were not within her usual job description, and her "subjective dissatisfaction with her assignments is insufficient" to show an adverse action, even in combination with all Plaintiff Del Valle's other allegations. *Reckard v. Cnty. of Westchester*, 351 F. Supp. 2d 157, 161 (S.D.N.Y. 2004).

The only alleged conduct that may satisfy the "adverse action" requirement is the denial of overtime opportunities.  The allegation, though, is devoid of any specifics.  The entire assertion states, "Consistently throughout her employment by DOT Del Valle has been given less overtime opportunities [sic] than employees who are not Hispanic women."  ECF No. 1 ¶ 26.  It is difficult to ascertain from this single, unsupported statement whether this alleged denial rises to the level of an adverse action.

But the court need not make any conclusions as to the sufficiency of the factual allegation because it is clear that Plaintiff Del Valle's discrimination claim still fails at the next element.  Even if the court were to accept this bald accusation as a plausibly-pled adverse action, the court could not infer from that single sentence any discriminatory animus.

Plaintiff Del Valle has not asserted any facts that could show that the women who were given overtime instead of her were similarly situated to her.  She does not specifically identify these comparators in any way, much less state their positions or level of experience, or even their relevant demographic characteristics.  There simply is insufficient information from which the court could conclude that the referenced comparators are similarly situated to Plaintiff Del Valle.

And there are no other alleged facts from which the court could infer that the denial of overtime resulted from discriminatory animus.  Although Plaintiff Del Valle alleges that her crew leader made disparaging comments about women working for the Department of Transportation and that her supervisor referred to Hispanics as "you people," this is insufficient to show discriminatory animus as to the denied overtime.

In the first instance, it is nowhere alleged that the crew leader and supervisor had anything to do with the denial of her overtime.  And even assuming that they did control her schedule, it is unclear whether their remarks were sufficiently inflammatory or frequent.  Stray comments "do not amount to the 'steady barrage of opprobrious ... comments' sufficient to alter the conditions" of Plaintiff Del Valle's employment.  *Brenner v. City of New York Dep't of Educ.*, 659 F. App'x 52, 54 (2d Cir. 2016) (quoting *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015)) (alteration in original).  Plaintiff asserts that her crew leader says things "to the effect" that women should not be working for Defendant, but she gives no specifics.  The court therefore cannot assess the content and context of these comments to corroborate her conclusion.  Similarly, while referring to a particular group as "you people" certainly can denote a bias relevant to a Title VII claim, the allegation in the complaint is only that Plaintiff Del Valle's crew leader and supervisor

19

have used this reference.  Again, absent any context for these comments, it is difficult for the court to conclude that these comments alone can sustain her claim.

It also is unclear when and how often these comments were made.  Plaintiff Del Valle alleges that she has heard her crew leader comment about the unsuitability of women to Defendant's work "[f]rom the beginning of her employment," but she does not allege the frequency of these comments.  And her allegation as to the use of "you people" could just as easily show a single incident as several.  Accordingly, even assuming that Plaintiff Del Valle's denied overtime opportunities constitute an adverse employment action, she has not adequately pled discriminatory animus such that her discrimination claims could survive dismissal.

Accordingly, Counts One and Five are dismissed (Count One as it relates to Plaintiff Del Valle).

### iii.  _Retaliation as to Plaintiff Del Valle_[15]

Retaliation claims follow a similar burden-shifting framework as discrimination claims follow. "First, the plaintiff must establish a prima facie case of retaliation by showing: '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  _Hicks v. Baines_, 593 F.3d 159, 164 (2d Cir. 2010) (quoting _Jute v. Hamilton Sundstrand Corp.,_ 420 F.3d 166, 173 (2d Cir.2005).  Again, success at this step shifts the burden to Defendant to articulate a legitimate, non-discriminatory reason for the adverse action.  _Id._  And finally,

---

[15] As noted _supra_, Defendant does not argue for dismissal of Plaintiff Wilson's retaliation claim.

the burden shifts back to the plaintiff to proffer evidence from which a factfinder reasonably could infer a retaliatory motive for the adverse action.  *Id.*

Here, Plaintiff Del Valle complained about discrimination in the workplace, which qualifies as protected activity for purposes of Title VII.  *See Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (finding that internal complaints of discrimination are protected activities).  And, since she complained directly to management, Defendant certainly knew of the protected activity.  Thus, the first two elements clearly are satisfied.

The third and fourth elements prove as problematic for Plaintiff Del Valle's retaliation claim as they were for her discrimination claim, though, despite the more lax standard applied to retaliation claims.  "An adverse employment action in a retaliation case includes conduct that is 'harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Duplan v. City of New York*, 888 F.3d 612, 626–27 (2d Cir. 2018) (quoting *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 309 (2d Cir. 2017)).  "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII . . . ." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).  "[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)) (alterations in original).  There is no bright-line test courts employ in determining whether particular conduct constitutes an adverse employment action.  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010).  Rather, courts take a fact-intensive approach, scrutinizing each case to determine whether a challenged action rises to the level required by the statute.  *Id.*

Thus, although Plaintiff Del Valle could not show an adverse action for purposes of her discrimination claim, the court must reassess that conduct (denial of training and overtime, denial of appointment as backup clerk, denial of perquisites, and assignment to more arduous tasks) to determine whether it yet can satisfy the requirements of her retaliation claim.

The Second Circuit has held that the assignment of more difficult tasks, *see Vega*, 801 F.3d at 91 (finding that a teacher's assignment of more difficult classes qualified as an adverse employment action), and the denial of overtime, *see Lewis v. Triborough Bridge & Tunnel Auth.*, 31 F. App'x 746, 748 (2d Cir. 2002) (affirming a jury verdict in a plaintiff's favor where the plaintiff alleged, *inter alia*, denial of overtime as the basis for her retaliation claim), may qualify as an adverse employment actions for purposes of a Title VII retaliation claim.  But Plaintiff Del Valle clearly fails to establish that she experienced these actions *following* her January 22, 2020, complaint to management.  To the contrary, Plaintiff Del Valle clearly asserts that she has been made to perform harder tasks and has been denied overtime *throughout* her time with Defendant.  Thus, the causal connection between this conduct and the protected activity is absent.

Similarly, without any specifics as to when the alleged denial of perquisites and longer breaks occurred, the court cannot find the requisite causal connection to that conduct, even assuming it could qualify as an adverse employment action.  *See Chung v. City Univ. of New York*, 605 F. App'x 20, 23 (2d Cir. 2015) (stating that where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation

does not arise.") (quoting *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir.2001).

And with respect to the denial of training opportunities and her request to be backup clerk,[16] here, again, Plaintiff Del Valle fails to allege that these trainings had any effect on her progression in her career, or that the position of backup clerk was superior in any way to her usual role.  Absent some allegation that these trainings would have led to some advantage to Plaintiff Del Valle, the court cannot find that exclusion therefrom would dissuade a reasonable person from asserting charges of discrimination.  *See Leifer v. New York State Div. of Parole,* 391 F. App'x 32, 34 (2d Cir. 2010) (finding that failing to provide a training to the plaintiff, *inter alia*, was insufficient to demonstrate an adverse employment action).

Even if this conduct could qualify as an adverse employment action for purposes of her retaliation claim, there is nothing from which the court could infer discriminatory motivation.  One of the trainings she specifically mentions (of only two) was held in November 2021, over a year and a half after she had made her internal complaint and over a year after she had filed her complaint with the CHRO.   Similarly, her request to be stationed at the backup clerk position came at some point after May 2021,[17] over a year after the internal complaint and almost a year after the CHRO complaint.  The lengthy period between the protected activity and the allegedly retaliatory conduct attenuates any causal connection.  Thus, even taking as given that Plaintiff Del Valle experienced an

---

[16] Again, the court acknowledges that these actions appear to be pleaded in connection with Plaintiff Del Valle's disability discrimination claims, but the court addresses them here nonetheless.
[17] While it is clear that Plaintiff Dell Valle made several requests for the backup clerk position, it is not clear when she first made the request.  But it appears from the complaint that her first request came after her on-the-job accident, since management told her she could not be backup clerk while on light duty, and since she was on light duty after the accident.  ECF No. 1 ¶¶ 46–49.  So, because the accident occurred in May 2021, her pleading shows that her request could not have been before that time.

adverse employment action that satisfied the third element of her prima facie case, she has not established a causal connection between her internal complaint and those actions that satisfies the fourth element.

However, though it is not clearly stated in the complaint or thoroughly argued in Plaintiff Del Valle's opposition, the court finds that she does have an actionable claim for Plaintiff *Wilson's* termination. Title VII's antiretaliation provision covers a broad range of employer conduct. *Burlington*, 548 U.S. at 62–63 (discussing the broader language Congress employed in the antiretaliation provision as compared to the antidiscrimination provision). Violative actions need not affect the employee's terms of employment or employment conditions. *Id.* at 63. It need only dissuade an employee from engaging in protected activity, and actions taken against a third party may certainly serve that purpose. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 175 (2011) ("We think there is no textual basis for making an exception to [the broad standard for retaliatory conduct] for third-party reprisals . . . ."). And while the Supreme Court of the United States has declined to explicitly list those relationships that could support a retaliation claim, this court finds that the plaintiffs' relationship as mother and son certainly is close enough to render adverse action against one to be adequate deterrence for the other. *Id.* at 174. ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired.").

Furthermore, the court finds that Plaintiff Del Valle has alleged sufficient facts to support the rational inference of a causal connection. First, Plaintiff Del Valle's complaint (in January 2020) and Plaintiff Wilson's termination (in April 2020) were close enough in time that temporal proximity alone may carry the requisite causal inference. Second, the

clear closeness of the plaintiffs' relationship, as indicated by Plaintiff Del Valle's attention to her son's employment concerns (namely, her attention to the discrepancy in his paycheck), would indicate to others at her job a maternal sense of affection and responsibility toward him.[18]   And finally, the threat Plaintiff Del Valle received from her higher-ups that they would "get rid" of her after her internal complaint had been disposed of indicates a retaliatory predilection that, though the threat postdated her son's termination, yet could lead a factfinder to conclude that Plaintiff Wilson's termination was a result of that predilection.

Accordingly, the court finds that Plaintiff Del Valle has stated a cognizable claim for retaliation under Title VII.

### IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss, ECF No. 14, is **DENIED in part and is GRANTED in part.**

    i.   Counts Three, Four, Five, and Six are dismissed in their entirety.

    ii.  Count One is dismissed only as to Plaintiff Del Valle.

2. Given this ruling, the Motion to Terminate Stay of Discovery, ECF No. 23, is **DENIED as moot.**

3. The Motion for Permission to Amend Complaint, ECF No. 25, is **DENIED.**

---

[18] It also appears from a comment by the acting director that Plaintiff Wilson was only hired because of his mother, *see* ECF No. 1 ¶ 39, that Plaintiff Del Valle may have secured the job for her son in the first instance.

i. The parties are instructed to confer and to propose, on or before **January 15, 2024,** a new litigation schedule for this case in light of this ruling.

ii. The parties also shall indicate in this submission whether they are interested in being referred to a United States Magistrate Judge for a settlement conference.

**IT IS SO ORDERED** at Hartford, Connecticut, this 7th day of December, 2023.

_____/s/_____
Omar A. Williams
United States District Judge